UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

ABDIWELI HASHI, ADAN MOHAMUD, AHMED ABDULKADIR, GULAID SHIRE, ABDULQANI ABDIRAHMAN, JOEY GOODLIN, and SEGUN DUYILE,

    Plaintiff,

vs.

ES PARTNERS, INC., a Florida Profit Corporation, d/b/a MEDLINE EXPRESS SERVICES, INC.,

    Defendant.
_____/

CASE NO.:

## **COMPLAINT**

COMES NOW the Plaintiffs, ABDIWELI HASHI, ADAN MOHAMUD, AHMED ABDULKADIR, GULAID SHIRE, ABDULQANI ABDIRAHMAN, JOEY GOODLIN, and SEGUN DUYILE (hereinafter "PLAINTIFFS"), by and through the undersigned Counsel, and sues the Defendant, ES PARTNERS, INC., a Florida Profit Corporation, d/b/a MEDLINE EXPRESS SERVICES, INC., (hereinafter "MEDLINE"), and alleges the following:

### **NATURE OF THE CASE**

1. This is an employment discrimination case, brought pursuant to the provisions of the Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991 ("Section 1981"). Plaintiffs allege that Defendant, MEDLINE, has engaged in, and continues to engage in, a company-wide pattern and practice of employment discrimination, both intentional and systematic, on the basis of race and national origin, against themselves as African and black employees as alleged in this Complaint. MEDLINE's discriminatory practices include, without

1

limitation, discrimination against black, African drivers as alleged in this Complaint. Plaintiffs seek declaratory, injunctive, and equitable monetary relief from these practices; compensatory and punitive damages; equitable remedies of accounting, restitution and disgorgement; an award of costs, expenses, and attorneys' fees.

## JURISDICTION AND VENUE

2. This is a civil action with damages that exceed Thirty Thousand Dollars ($30,000.00), exclusive of interest and costs.

3. This Court is vested with federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 for Plaintiff's claims arising under the following: Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991 ("Section 1981"). This Court has supplemental jurisdiction over Plaintiff's related claims arising under state and local laws pursuant to 28 U.S.C. § 1367.

4. Venue lies within the Southern District of Florida, Ft. Lauderdale Division, pursuant to 28 U.S.C. § 1391(c). MEDLINE is subject to personal jurisdiction in this District in that it maintains facilities and business operations in this District.

## PARTIES

5. The named Plaintiffs are former employees of Defendant, MEDLINE.

6. Plaintiff, ABDIWELI HASHI ("HASHI") is a black Muslim Somalian male and a resident of Minneapolis, Minnesota. At all times herein mentioned, HASHI was employed by MEDLINE located at 4220 Park Glen Rd., St. Louis, MN 55418. HASHI worked for MEDLINE as a driver, delivering pharmaceuticals across the country. HASHI began working for MEDLINE on or about May 2019 and was terminated on December 14, 2019.

7. Plaintiff, ADAN MOHAMUD ("MOHAMUD") is a black Muslim Somalian male and a resident of Bloomington, Minnesota. At all times herein mentioned, MOHAMUD was employed by MEDLINE located at 4220 Park Glen Rd., St. Louis, MN 55418. MOHAMUD worked for MEDLINE as a driver, delivering pharmaceuticals across the country. MOHAMUD began working for MEDLINE on or about March 2019 and was terminated on December 14, 2019.

8. Plaintiff, AHMED ABDULKADIR ("ABDULKADIR") is a black Muslim Somalian male and a resident of Minneapolis, Minnesota. At all times herein mentioned, ABDULKADIR was employed by MEDLINE located at 4220 Park Glen Rd., St. Louis, MN 55418. ABDULKADIR worked for MEDLINE as a driver, delivering pharmaceuticals across the country. ABDULKADIR began working for MEDLINE on or about July 2019 and was terminated on December 14, 2019.

9. Plaintiff, GULAID SHIRE ("SHIRE") is a black Muslim Somalian male and a resident of Minneapolis, Minnesota. At all times herein mentioned, SHIRE was employed by MEDLINE located at 4220 Park Glen Rd., St. Louis, MN 55418. SHIRE worked for MEDLINE as a driver, delivering pharmaceuticals across the country. SHIRE began working for MEDLINE on or about May 2019 and was terminated on December 14, 2019.

10. Plaintiff, ABDULQANI ABDIRAHMAN ("ABDIRAHMAN") is a black Muslim Somalian male and a resident of Minneapolis, Minnesota. At all times herein mentioned, ABDIRAHMAN was employed by MEDLINE located at 4220 Park Glen Rd., St. Louis, MN 55418. ABDIRAHMAN worked for MEDLINE as a driver, delivering pharmaceuticals across the country. ABDIRAHMAN began working for MEDLINE on or about May 2019 and was terminated on December 14, 2019.

11. Plaintiff, JOEY GOODLIN ("GOODLIN") is a black Liberian male and a resident of Brooklyn Park, Minnesota. At all times herein mentioned, GOODLIN was employed by MEDLINE located at 4220 Park Glen Rd., St. Louis, MN 55418. GOODLIN worked for MEDLINE as a driver, delivering pharmaceuticals across the country. GOODLIN began working for MEDLINE on or about April 2019 and was terminated on December 14, 2019.

12. Plaintiff, SEGUN DUYILE ("DUYILE") is a black Nigerian male and a resident of Coon Rapids, Minnesota. At all times herein mentioned, DUYILE was employed by MEDLINE located at 4220 Park Glen Rd., St. Louis, MN 55418. DUYILE worked for MEDLINE as a driver, delivering pharmaceuticals across the country. DUYILE began working for MEDLINE on or about February 2019 and was terminated on December 14, 2019.

13. MEDLINE is duly authorized and licensed to do business in Broward County, Florida. MEDLINE, with its headquarters in Broward County, Florida, operates as a premier prescription courier service with dispatch centers servicing Florida, Illinois, Indiana, Maryland, Michigan, Minnesota, North Carolina, Ohio, Tennessee, Wisconsin, and Washington DC and employees more than twenty (20) employees.

**GENERAL ALLEGATIONS**

14. MEDLINE's employment practices and systems discriminate against African, black, and Muslim employees because of their race, color, national origin, and religion. The discriminatory practices engaged in by MEDLINE are intentional and systematic in nature, and adversely affected the PLAINTIFFS and possibly other members of their protected classes with respect to opportunities for continued employment, promotion, transfer, job assignment, and other terms and conditions of employment, as specifically summarized below.

15. MEDLINE's upper-level management is comprised mostly of American employees. The homogenous composition of MEDLINE's management at the highest levels is reflected in management throughout the facilities of MEDLINE.

16. Such upper-level non-African managers, particularly managers transferred from Florida's department to Minnesota, have communicated MEDLINE's discriminatory policies and practices. For example, upon the transfer of the management from Florida to Minnesota, MEDLINE engaged in a clear out of many of its African employees including the PLAINTIFFS.

17. Prior to their termination, PLAINTIFFS were contracted to work for MEDLINE in Minnesota as "independent contractors." Each PLAINTIFF signed an independent contractor agreement that was drafted in Florida and included boilerplate provisions. Despite being labeled as "independent contractors," MEDLINE controlled PLAINTIFFS' schedules, time and manner of work, and all deliveries. MEDLINE paid PLAINTFFS by the route, not per hour. MEDLINE was responsible for assigning routes.

18. Throughout the PLAINTIFFS' employment, PLAINTIFFS were well liked by their customers on their regular routes, receiving positive feedback and known for being polite, responsible, trusted, and courteous.

19. Further, management often gave PLAINTIFFS high marks and praise. None of the PLAINTIFFS received any negative performance reviews or any disciplinary actions throughout their employment.

20. However, in 2019, MEDLINE initiated management changes and assigned several managers from Florida to the Minnesota region where PLAINTIFFS were based. Immediately upon the new management's arrival, PLAINTIFFS experienced discriminatory treatment including:

    a. Subjection to racial slurs;

    b. Bans against practicing the Islamic religion pursuant to several of the PLAINTIFFs' Muslim practices;

    c. Prohibitions from using the restrooms in the MEDLINE building;

    d. Being told by the new Regional Manager, Buford Cochran, regardless of the Plaintiffs' actual national origin, that "all you Somalis can be replaced."

21. Shortly after the management transition, despite a positive work history and good relationships with customers, MEDLINE systematically "deactivated" each of the PLAINTIFFS, effectively terminating them from MEDLINE via text message, phone call, or radio transmission on December 14, 2019.

22. According to the "independent contractor" agreement signed by the PLAINTIFFS, the agreement was to renew automatically every six (6) months. Should MEDLINE or PLAINTIFFS wish to terminate or separate services, the agreement called for at least one (1) week's advance notice. PLAINTIFFs did not receive any notice prior to their terminations.

23. Following their terminations, the PLAINTIFFS were replaced by Caucasian drivers.

### COUNT I
### VIOLATION OF 42 U.S.C. § 1981
### (ALL PLAINTIFFS)

24. PLAINTIFFS repeat and reallege and incorporate by this reference the allegations set forth in paragraphs 1 through 23 as though fully set forth herein.

25. MEDLINE's discrimination against the PLAINTIFFS is in violation of the rights of PLAINTIFFS afforded them by the Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991.

26. By the conduct described above, MEDLINE intentionally targeted the PLAINTIFFS based on their color, national origin, and perceived religious beliefs.

27. MEDLINE deprived the above named black African PLAINTIFFS of the same rights as are enjoyed by white, American citizens to the creation, performance, enjoyment, and all benefits and privileges of their contractual relationship with MEDLINE, in violation of 42 U.S.C. § 1981.

28. As a result of MEDLINE's violation of Section 1981, the black African PLAINTIFFS have been denied employment opportunities providing substantial compensation and benefits, thereby entitling them to injunctive and equitable monetary relief; and have suffered anguish, humiliation, distress, inconvenience and loss of enjoyment of life because of MEDLINE's actions, thereby entitling them to compensatory damages.

29. PLAINTIFFS injury would not have occurred but for MEDLINE's discriminatory animus and conduct based on PLAINTIFFS' color, national origin, and perceived religious beliefs.

30. In its discriminatory actions as alleged in the General Allegations, MEDLINE has acted with malice or reckless indifference to the rights of the above-named PLAINTIFFS, thereby entitling them to an award of punitive damages.

31. To remedy the violations of the rights of PLAINTIFFS secured by Section 1981, PLAINTIFFS request that the Court award them the relief prayed for below.

## COUNT II
## BREACH OF CONTRACT
### (Abdiweli Hashi)

32. PLAINTIFFS repeat and reallege and incorporate by this reference the allegations set forth in paragraphs 1 through 13, 21, and 22 as though fully set forth herein.

33. At all times material hereto, PLAINTIFF, ABDIWELI HASHI, was employed by MEDLINE as a driver.

34. In or around May 2019, HASHI, entered into an Employment Agreement with MEDLINE whereby HASHI was to be hired as a driver and said agreement would renew automatically every six (6) months.

35. Further, the Employment Agreement stated that should MEDLINE or HASHI wish to terminate or separate services, at least one (1) week's advance notice of said termination or separation must be provided.

36. HASHI's Employment Agreement with MEDLINE constituted a valid contract.

37. On December 14, 2019, MEDLINE terminated HASHI's employment, effective immediately.

38. Said termination without providing any notice is contrary to the terms as set forth in the Employment Contract Agreement.

39. The failure to provide HASHI at least one (1) week's notice prior to his termination while HASHI was employed with MEDLINE and under contract pursuant to the terms of the Employment Contract Agreement constitutes a material breach of the Employment Agreement.

40. As a result of MEDLINE's breach of HASHI's Employment Agreement, ABDIWELI HASHI has suffered damages, including lost wages and benefits.

41. Additionally, HASHI has been required to retain the services of the undersigned law firm and has incurred and will continue to incur reasonable attorney's fees and costs.

## COUNT III
## BREACH OF CONTRACT
(Adan Mohamud)

8

42. PLAINTIFFS repeat and reallege and incorporate by this reference the allegations set forth in paragraphs 1 through 13, 21, and 22 as though fully set forth herein.

43. At all times material hereto, PLAINTIFF, ADAN MOHAMUD, was employed by MEDLINE as a driver.

44. In or around March 2019, MOHAMUD, entered into an Employment Agreement with MEDLINE whereby MOHAMUD was to be hired as a driver and said agreement would renew automatically every six (6) months.

45. Further, the Employment Agreement stated that should MEDLINE or MOHAMUD wish to terminate or separate services, at least one (1) week's advance notice of said termination or separation must be provided.

46. MOHAMUD's Employment Agreement with MEDLINE constituted a valid contract.

47. On December 14, 2019, MEDLINE terminated MOHAMUD's employment, effective immediately.

48. Said termination without providing any notice is contrary to the terms as set forth in the Employment Contract Agreement.

49. The failure to provide MOHAMUD at least one (1) week's notice prior to his termination while MOHAMUD was employed with MEDLINE and under contract pursuant to the terms of the Employment Contract Agreement constitutes a material breach of the Employment Agreement.

50. As a result of MEDLINE's breach of MOHAMUD's Employment Agreement, MOHAMUD has suffered damages, including lost wages and benefits, mental anguish, loss of reputation, and loss of enjoyment of life.

51. Additionally, MOHAMUD has been required to retain the services of the undersigned law firm and has incurred and will continue to incur reasonable attorney's fees and costs.

## COUNT III
## BREACH OF CONTRACT
(Ahmed Abdulkadir)

52. PLAINTIFFS repeat and reallege and incorporate by this reference the allegations set forth in paragraphs 1 through 13, 21, and 22 as though fully set forth herein.

53. At all times material hereto, PLAINTIFF, AHMED ABDULKADIR, was employed by MEDLINE as a driver.

54. In or around July 2019, ABDULKADIR, entered into an Employment Agreement with MEDLINE whereby ABDULKADIR was to be hired as a driver and said agreement would renew automatically every six (6) months.

55. Further, the Employment Agreement stated that should MEDLINE or ABDULKADIR wish to terminate or separate services, at least one (1) week's advance notice of said termination or separation must be provided.

56. ABDULKADIR's Employment Agreement with MEDLINE constituted a valid contract.

57. On December 14, 2019, MEDLINE terminated ABDULKADIR's employment, effective immediately.

58. Said termination without providing any notice is contrary to the terms as set forth in the Employment Contract Agreement.

59. The failure to provide ABDULKADIR at least one (1) week's notice prior to his termination while ABDULKADIR was employed with MEDLINE and under contract pursuant to

the terms of the Employment Contract Agreement constitutes a material breach of the Employment Agreement.

60. As a result of MEDLINE's breach of ABDULKADIR's Employment Agreement, ABDULKADIR has suffered damages, including lost wages and benefits.

61. Additionally, ABDULKADIR has been required to retain the services of the undersigned law firm and has incurred and will continue to incur reasonable attorney's fees and costs.

## COUNT IV
## BREACH OF CONTRACT
**(Gulaid Shire)**

62. PLAINTIFFS repeat and reallege and incorporate by this reference the allegations set forth in paragraphs 1 through 13, 21, and 22 as though fully set forth herein.

63. At all times material hereto, PLAINTIFF, GULAID SHIRE, was employed by MEDLINE as a driver.

64. In or around May 2019, SHIRE, entered into an Employment Agreement with MEDLINE whereby SHIRE was to be hired as a driver and said agreement would renew automatically every six (6) months.

65. Further, the Employment Agreement stated that should MEDLINE or SHIRE wish to terminate or separate services, at least one (1) week's advance notice of said termination or separation must be provided.

66. SHIRE's Employment Agreement with MEDLINE constituted a valid contract.

67. On December 14, 2019, MEDLINE terminated SHIRE's employment, effective immediately.

68. Said termination without providing any notice is contrary to the terms as set forth in the Employment Contract Agreement.

69. The failure to provide SHIRE at least one (1) week's notice prior to his termination while SHIRE was employed with MEDLINE and under contract pursuant to the terms of the Employment Contract Agreement constitutes a material breach of the Employment Agreement.

70. As a result of MEDLINE's breach of SHIRE's Employment Agreement, SHIRE has suffered damages, including lost wages and benefits.

71. Additionally, SHIRE has been required to retain the services of the undersigned law firm and has incurred and will continue to incur reasonable attorney's fees and costs.

## COUNT VI
## BREACH OF CONTRACT
### (Abdulqani Abdirahman)

72. PLAINTIFFS repeat and reallege and incorporate by this reference the allegations set forth in paragraphs 1 through 13, 21, and 22 as though fully set forth herein.

73. At all times material hereto, PLAINTIFF, ABDULQANI ABDIRAHMAN, was employed by MEDLINE as a driver.

74. In or around May 2019, ABDIRAHMAN, entered into an Employment Agreement with MEDLINE whereby ABDIRAHMAN was to be hired as a driver and said agreement would renew automatically every six (6) months.

75. Further, the Employment Agreement stated that should MEDLINE or ABDIRAHMAN wish to terminate or separate services, at least one (1) week's advance notice of said termination or separation must be provided.

76. ABDIRAHMAN's Employment Agreement with MEDLINE constituted a valid contract.

77. On December 14, 2019, MEDLINE terminated ABDIRAHMAN's employment, effective immediately.

78. Said termination without providing any notice is contrary to the terms as set forth in the Employment Contract Agreement.

79. The failure to provide ABDIRAHMAN at least one (1) week's notice prior to his termination while ABDIRAHMAN was employed with MEDLINE and under contract pursuant to the terms of the Employment Contract Agreement constitutes a material breach of the Employment Agreement.

80. As a result of MEDLINE's breach of ABDIRAHMAN's Employment Agreement, ABDIRAHMAN has suffered damages, including lost wages and benefits.

81. Additionally, ABDIRAHMAN has been required to retain the services of the undersigned law firm and has incurred and will continue to incur reasonable attorney's fees and costs.

## COUNT VII
## BREACH OF CONTRACT
**(Joey Goodlin)**

82. PLAINTIFFS repeat and reallege and incorporate by this reference the allegations set forth in paragraphs 1 through 13, 21, and 22 as though fully set forth herein.

83. At all times material hereto, PLAINTIFF, JOEY GOODLIN, was employed by MEDLINE as a driver.

84. In or around April 2019, GOODLIN, entered into an Employment Agreement with MEDLINE whereby GOODLIN was to be hired as a driver and said agreement would renew automatically every six (6) months.

85. Further, the Employment Agreement stated that should MEDLINE or GOODLIN wish to terminate or separate services, at least one (1) week's advance notice of said termination or separation must be provided.

86. GOODLIN's Employment Agreement with MEDLINE constituted a valid contract.

87. On December 14, 2019, MEDLINE terminated GOODLIN's employment, effective immediately.

88. Said termination without providing any notice is contrary to the terms as set forth in the Employment Contract Agreement.

89. The failure to provide GOODLIN at least one (1) week's notice prior to his termination while GOODLIN was employed with MEDLINE and under contract pursuant to the terms of the Employment Contract Agreement constitutes a material breach of the Employment Agreement.

90. As a result of MEDLINE's breach of GOODLIN's Employment Agreement, GOODLIN has suffered damages, including lost wages and benefits.

91. Additionally, GOODLIN has been required to retain the services of the undersigned law firm and has incurred and will continue to incur reasonable attorney's fees and costs.

## COUNT VIII
## BREACH OF CONTRACT
### (Segun Duyile)

92. PLAINTIFFS repeat and reallege and incorporate by this reference the allegations set forth in paragraphs 1 through 13, 21, and 22 as though fully set forth herein.

93. At all times material hereto, PLAINTIFF, SEGUN DUYILE, was employed by MEDLINE as a driver.

94. In or around February 2019, DUYILE, entered into an Employment Agreement with MEDLINE whereby DUYILE was to be hired as a driver and said agreement would renew automatically every six (6) months.

95. Further, the Employment Agreement stated that should MEDLINE or DUYILE wish to terminate or separate services, at least one (1) week's advance notice of said termination or separation must be provided.

96. DUYILE's Employment Agreement with MEDLINE constituted a valid contract.

97. On December 14, 2019, MEDLINE terminated DUYILE's employment, effective immediately.

98. Said termination without providing any notice is contrary to the terms as set forth in the Employment Contract Agreement.

99. The failure to provide DUYILE at least one (1) week's notice prior to his termination while DUYILE was employed with MEDLINE and under contract pursuant to the terms of the Employment Contract Agreement constitutes a material breach of the Employment Agreement.

100. As a result of MEDLINE's breach of DUYILE's Employment Agreement, DUYILE has suffered damages, including lost wages and benefits.

101. Additionally, DUYILE has been required to retain the services of the undersigned law firm and has incurred and will continue to incur reasonable attorney's fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, ABDIWELI HASHI, ADAN MOHAMUD, AHMED ABDULKADIR, GULAID SHIRE, ABDULQANI ABDIRAHMAN, JOEY GOODLIN, and

SEGUN DUYILE, demand judgment against Defendant, ES PARTNERS, INC., a Florida Profit Corporation, d/b/a MEDLINE EXPRESS SERVICES, INC., and requests the following relief:

1. Enter judgment in favor of PLAINTIFFS for ES PARTNERS, INC., a Florida Profit Corporation, d/b/a MEDLINE EXPRESS SERVICES, INC.'s violations of the Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991.

2. Award PLAINTIFFS actual damages suffered;

3. Award back pay and value of lost employment benefits to PLAINTIFFS;

4. Award front pay to PLAINTIFFS for the years PLAINTIFFS would have worked absent ES PARTNERS, INC., a Florida Profit Corporation, d/b/a MEDLINE EXPRESS SERVICES, INC.'s discriminatory treatment;

5. Enter judgment in favor of PLAINTIFFS for compensatory damages for the embarrassment, anxiety, humiliation, and emotional distress PLAINTIFFS have suffered and continue to suffer;

6. Award PLAINTIFFS punitive damages;

7. Award to PLAINTIFFS all costs and reasonable attorney's fees incurred in connection with this action;

8. Award prejudgment interest on all monetary recovery obtained;

9. An injunction permanently enjoining ES PARTNERS, INC., a Florida Profit Corporation, d/b/a MEDLINE EXPRESS SERVICES, INC., its officers, agents, employees, assigns and all persons in active concert of participation with them from engaging in any employment practice which discriminates on the basis of religion; and

10. Grant such additional or alternative relief as may appear to the court to be just and equitable.

## BENCH TRIAL DEMAND

Plaintiffs, ABDIWELI HASHI, ADAN MOHAMUD, AHMED ABDULKADIR, GULAID SHIRE, ABDULQANI ABDIRAHMAN, JOEY GOODLIN, and SEGUN DUYILE, demands a bench trial on all issues so triable.

Dated January 11, 2022.

**Sconzo Law Office, P.A.**
3825 PGA Boulevard, Suite 207
Palm Beach Gardens, FL 33410
Telephone: (561) 729-0940
Facsimile: (561) 491-9459

By: **/s/ Gregory S. Sconzo**
GREGORY S. SCONZO, ESQUIRE
Florida Bar No.: 0105553
**Primary Email:** greg@sconzolawoffice.com